## ARNDT *v.* GRIGGS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 1150. Submitted January 10, 1890. — Decided March 17, 1890.

A State may provide by statute that the title to real estate within its limits shall be settled and determined by a suit in which the defendant, being a non-resident, is brought into court by publication.

The well-settled rules, that an action to quiet title is a suit in equity; that equity acts upon the person; and that the person is not brought into court by service by publication alone; do not apply when a State has provided by statute for the adjudication of titles to real estate within its limits as against non-residents, who are brought into court only by publication.

*Hart* v. *Sansom,* 110 U. S. 151, explained.

THIS was an action to recover possession of land and to quiet title. Judgment for the plaintiff. Defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Walter J. Lamb, Mr. Arnott C. Ricketts* and *Mr. Henry H. Wilson,* for plaintiffs in error, cited: *Holland* v. *Challen,* 110 U. S. 15; *Watson* v. *Ulbrich,* 18 Nebraska, 186; *Castrique* v. *Imrie,* L. R. 4 H. L. 414; *Burgess* v. *Seligman,* 107 U. S. 20; *Scudder* v. *Sargent,* 15 Nebraska, 102; *Keene* v. *Sallenbach,* 15 Nebraska, 200; *Langdon* v. *Sherwood,* 124 U. S. 74; *Boswell* v. *Otis,* 9 How. 336; *Parker* v. *Overman,* 18

How. 137; *Huling* v. *Kaw Valley Railway,* 130 U. S. 559; *Mellen* v. *Moline Iron Works,* 131 U. S. 352; *Salisbury* v. *Sands,* 2 Dillon, 270; *Blair* v. *West Point M'f'g Co.,* 7 Nebraska, 146, 152; *Penn* v. *Hayward,* 14 Ohio St. 302, 304; *Williams* v. *Welton,* 28 Ohio St. 451; *Fisher* v. *Fredericks,* 33 Missouri, 612; *Weil* v. *Lowenthal,* 10 Iowa, 575; *Brooklyn Trust Co.* v. *Bulmer,* 49 N. Y. 84; *Beebe* v. *Dostor,* 36 Kansas, 666; *Gillespie* v. *Thomas,* 23 Kansas, 138; *Walkenhorst* v. *Lewis,* 24 Kansas, 420; *Rowe* v. *Palmer,* 29 Kansas, 337; *Entreken* v. *Howard,* 16 Kansas, 551; *Howard* v. *Entreken,* 24 Kansas, 428; *Cloyd* v. *Trotter,* 118 Illinois, 391.

*Mr. Nathan K. Griggs, Mr. Samuel Rinaker* and *Mr. Julius A. Smith,* for defendant in error, cited : *Hart* v. *Sansom,* 110 U. S. 151, and cases therein cited; *Pennoyer* v. *Neff,* 95 U. S. 714; *Stang* v. *Redden,* 28 Fed. Rep. 11, 12; *Clark* v. *Hammett,* 27 Fed. Rep. 339; *Pitts* v. *Clay,* 27 Fed. Rep. 635, 637; *Howard* v. *Entreken,* 24 Kansas, 428; *Watson* v. *Ulbrich,* 18 Nebraska, 186.; *Grimes* v. *Hobson,* 46 Texas, 416; *Dangerfield* v. *Paschal,* 20 Texas, 537; *Titus* v. *Johnson,* 50 Texas, 224; *Johnson* v. *Bryan,* 62 Texas, 623; *Eaton* v. *Badger,* 33 N. H. 228; *Nebraska* v. *Sioux City & Pacific Railroad,* 7 Nebraska, 357; *Gregory* v. *Lancaster County Bank,* 16 Nebraska, 411; *Snowden* v. *Tyler,* 21 Nebraska, 199.

MR. JUSTICE BREWER delivered the opinion of the court.

The statutes of Nebraska contain these sections : Sec. 57, chap. 73, Compiled Statutes 1885, p. 483 : " An action may be brought and prosecuted to final decree, judgment or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons, who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate." Sec. 58 : " All such pleadings and proofs and subsequent proceedings shall be had in such action now pending or hereafter brought, as may be necessary to fully settle or determine the question of title between the par-

ties to said real estate, and to decree the title to the same, or any part thereof, to the party entitled thereto ; and the court may issue the appropriate order to carry such decree, judgment or order into effect." Sec. 77, Code of Civil Procedure, Compiled Statutes 1885, p. 637 : "Service may be made by publication in either of the following cases : . . . *Fourth.* In actions which relate to, or the subject of which is, real or personal property in this State, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a non-resident of the State or a foreign corporation." Sec. 78 of the Code : "Before service can be made by publication, an affidavit must be filed that service of a summons cannot be made within this State, on the defendant or defendants, to be served by publication, and that the case is one of those mentioned in the preceding section. When such affidavit is filed the party may proceed to make service by publication." Sec. 82 of the Code : "A party against whom a judgment or decree has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order, have the same opened and be let in to defend ; . . . but the title to any property, the subject of the judgment or order sought to be opened, which by it, or in consequence of it, shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title to any property sold before judgment under an attachment." Sec. 429, *b*, of the Code : "When any judgment or decree shall be rendered for a conveyance, release or acquittance, in any court of this State, and the party or parties against whom the judgment or decree shall be rendered do not comply therewith within the time mentioned in said judgment or decree, such judgment or decree shall have the same operation and effect, and be as available, as if the conveyance, release or acquittance had been executed conformable to such judgment or decree."

Under these sections, in March, 1882, Charles L. Flint filed his petition in the proper court against Michael Hurley and

another, alleging that he was the owner and in possession of
the tracts of land in controversy in this suit; that he held title
thereto by virtue of certain tax deeds, which were described;
that the defendants claimed to have some title, estate, interest
in, or claim upon the lands by patent from the United States, or
deed from the patentee, but that whatever title, estate, or claim
they had, or pretended to have, was divested by the said tax
deeds, and was unjust, inequitable, and a cloud upon plaintiff's
title; and that this suit v as brought for the purpose of quieting
his title. The defendants were brought in by publication, a
decree was entered in favor of Flint quieting his title, and it
is conceded that all the proceedings were in full conformity
with the statutory provisions above quoted.

The present suit is one in ejectment, between grantees of
the respective parties to the foregoing proceedings to quiet
title; and the question before us, arising upon a certificate of
division of opinion between the trial judges, is whether the
decree in such proceedings to quiet title, rendered in accord-
ance with the provisions of the Nebraska statute, upon service
duly authorized by them, was valid and operated to quiet the
title in the plaintiff therein. In other words, has a State the
power to provide by statute that the title to real estate within
its limits shall be settled and determined by a suit in which
the defendant, being a non-resident, is brought into court
only by publication? The Supreme Court of Nebraska has
answered this question in the affirmative. *Watson* v. *Ulbrich,*
18 Nebraska, 189 — in which the court says : "The principal
question to be determined is whether or not the decree in
favor of Gray, rendered upon constructive service, is valid
until set aside. No objection is made to the service, or any
proceedings connected with it. The real estate in controversy
was within the jurisdiction of the District Court, and that
court had authority, in a proper case, to render the decree
confirming the title of Gray. In *Castrique* v. *Imrie,* L. R. 4
H. L. 414, 429, Mr. Justice Blackburn says: 'We think the
inquiry is, first, whether the subject matter was so situated
as to be within the lawful control of the State under the
authority of which the court sits; and, secondly, whether the

sovereign authority of that State has conferred on the court jurisdiction to decide as to the disposition of the thing, and the court has acted within its jurisdiction. If these conditions are fulfilled, the adjudication is conclusive against all the world.' The court, therefore, in this case, having authority to render the decree, and jurisdiction of the subject matter, its decree is conclusive upon the property until vacated under the statutes or set aside."

Section 57, enlarging as it does the class of cases in which relief was formerly afforded by a court of equity in quieting the title to real property, has been sustained by this court, and held applicable to suits in the federal court. *Holland* v. *Challen*, 110 U. S. 15. But it is earnestly contended that no decree in such a case, rendered on service by publication only, is valid or can be recognized in the federal courts. And *Hart* v. *Sansom*, 110 U. S. 151, is relied on as authority for this proposition. The propositions are, that an action to quiet title is a suit in equity; that equity acts upon the person; and that the person is not brought into court by service by publication alone.

While these propositions are doubtless correct as statements of the general rules respecting bills to quiet title, and proceedings in courts of equity, they are not applicable or controlling here. The question is not what a court of equity, by virtue of its general powers and in the absence of a statute, might do, but it is, what jurisdiction has a State over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts, to determine the validity and extent of the claims of non-residents to such real estate? If a State has no power to bring a non-resident into its courts for any purposes by publication, it is impotent to perfect the titles of real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a non-resident will remain for all time a cloud, unless such non-resident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend the sovereignty of the State. It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be

stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits — its process goes not out beyond its borders — but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice. The well-being of every community requires that the title of real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it. The duty of accomplishing this is local in its nature ; it is not a matter of national concern or vested in the general government ; it remains with the State ; and as this duty is one of the State, the manner of discharging it must be determined by the State, and no proceeding which it provides can be declared invalid, unless in conflict with some special inhibitions of the Constitution, or against natural justice. So it has been held repeatedly that the procedure established by the State, in this respect, is binding upon the federal courts. In *United States* v. *Fox*, 94 U. S. 315, 320, it was said: "The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated." See also *McCormick* v. *Sullivant*, 10 Wheat. 192, 202 ; *Beauregard* v. *New Orleans*, 18 How. 497 ; *Suydam* v. *Williamson*, 24 How. 427 ; *Christian Union* v. *Yount*, 101 U. S. 352 ; *Lathrop* v. *Bank*, 8 Dana, 114.

Passing to an examination of the decisions on the precise question it may safely be affirmed that the general, if not the uniform, ruling of state courts has been in favor of the power of the State to thus quiet the title to real estate within its limits. In addition to the case from Nebraska, heretofore

cited, and which only followed prior rulings in that State — *Scudder* v. *Sargent*, 15 Nebraska, 102; *Keene* v. *Sallenbach*, 15 Nebraska, 200 — reference may be had to a few cases. In *Cloyd* v. *Trotter*, 118 Illinois, 391, the Supreme Court of Illinois held that under the statutes of that State the court could acquire jurisdiction to quiet title by constructive service against non-resident defendants. A similar ruling as to jurisdiction acquired in a suit to set aside a conveyance as fraudulent as to creditors was affirmed in *Adams* v. *Cowles*, 95 Missouri, 501. In *Wunstel* v. *Landry*, 39 La. Ann. 312, it was held that a non-resident party could be brought into an action of partition by constructive service. In *Essig* v. *Lower*, 21 Northeastern Rep. 1090, the Supreme Court of Indiana thus expressed its views on the question: "It is also argued that the decree in the action to quiet title, set forth in the special finding, is *in personam* and not *in rem*, and that the court had no power to render such decree on publication. While it may be true that such decree is not *in rem*, strictly speaking, yet it must be conceded that it fixed and settled the title to the land then in controversy, and to that extent partakes of the nature of a judgment *in rem*. But we do not deem it necessary to a decision of this case to determine whether the decree is *in personam* or *in rem*. The action was to quiet the title to the land then involved, and to remove therefrom certain apparent liens. Section 318, Rev. Stat. 1881, expressly authorizes the rendition of such a decree on publication." This was since the decision in *Hart* v. *Sansom*, as was also the case of *Dillen* v. *Heller*, 39 Kansas, 599, in which Mr. Justice Valentine, for the court, says: "For the present we shall assume that the statutes authorizing service of summons by publication were strictly complied with in the present case, and then the only question to be considered is whether the statutes themselves are valid. Or, in other words, we think the question is this: Has the State any power, through the legislature and the courts, or by any other means or instrumentalities, to dispose of or control property in the State belonging to non-resident owners out of the State, where such non-resident owners will not voluntarily surrender

jurisdiction of their persons to the State or to the courts of the State, and where the most urgent public policy and justice require that the State and its courts should assume jurisdiction over such property? Power of this kind has already been exercised, not only in Kansas, but in all the other States. Lands of non-resident owners, as well as of resident owners, are taxed and sold for taxes; and the owners thereby may totally be deprived of such lands, although no notice is ever given to such owners, except a notice by publication, or some other notice of no greater value, force or efficacy. *Beebe* v. *Doster*, 36 Kansas, 666, 675, 677; *S. C.* 14 Pac. Rep. 150. Mortgage liens, mechanic's liens, material men's liens, and other liens are foreclosed against non-resident defendants upon service by publication only. Lands of non-resident defendants are attached and sold to pay their debts; and, indeed, almost any kind of action may be instituted and maintained against non-residents to the extent of any interest in property they may have in Kansas, and the jurisdiction to hear and determine in this kind of cases may be obtained wholly and entirely by publication. *Gillespie* v. *Thomas*, 23 Kansas, 138; *Walkenhorst* v. *Lewis*, 24 Kansas, 420; *Rowe* v. *Palmer*, 29 Kansas, 337; *Venable* v. *Dutch*, 37 Kansas, 515, 519. All the States by proper statutes authorize actions against non-residents, and service of summons therein by publication only, or service in some other form no better; and, in the nature of things, such must be done in every jurisdiction, in order that full and complete justice may be done where some of the parties are non-residents. We think a sovereign State has the power to do just such a thing. All things within the territorial boundaries of a sovereignty are within its jurisdiction; and, generally, within its own boundaries a sovereignty is supreme. Kansas is supreme, except so far as its power and authority are limited by the Constitution and laws of the United States; and within the Constitution and laws of the United States the courts of Kansas may have all the jurisdiction over all persons and things within the State which the constitution and laws of Kansas may give to them; and the mode of obtaining this jurisdiction may be prescribed wholly, entirely and exclu-

sively by the statutes of Kansas. To obtain jurisdiction of everything within the State of Kansas, the statutes of Kansas may make service by publication as good as any other kind of service."

Turning now to the decisions of this court: In *Boswell's Lessee* v. *Otis*, 9 How. 336, 348, was presented a case of a bill for a specific performance and an accounting, and in which was a decree for specific performance and accounting; and an adjudication that the amount due on such accounting should operate as a judgment at law. Service was had by publication, the defendants being non-residents. The validity of a sale under such judgment was in question; the court held that portion of the decree, and the sale made under it, void; but with reference to jurisdiction in a case for specific performance alone, made these observations: "Jurisdiction is acquired in one of two modes: first, as against the person of the defendant, by the service of process; or, secondly, by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment, beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be substantially a proceeding *in rem*. A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem*, in ordinary cases; but where such a procedure is authorized by statute, on publication, without personal service or process, it is substantially of that character."

In the case of *Parker* v. *Overman*, 18 How. 137, 140, the question was presented under an Arkansas statute, a statute authorizing service by publication. While the decision on the merits was adverse, the court thus states the statute, the case and the law applicable to the proceedings under it: "It had its origin in the state court of Dallas County, Arkansas, sitting in chancery. It is a proceeding under a statute of Arkansas, prescribing a special remedy for the confirmation of sales of land by a sheriff or other public officer. Its object is to quiet the title. The purchaser at such sales is authorized to

institute proceedings by a public notice in some newspaper, describing the land, stating the authority under which it was sold, and ' calling on all persons who can set up any right to the lands so purchased, in consequence of any informality, or any irregularity or illegality connected with the sale, to show cause why the sale so made should not be confirmed.' In case no one appears to contest the regularity of the sale, the court is required to confirm it, on finding certain facts to exist. But if opposition be made, and it should appear that the sale was made ' contrary to law,' it became the duty of the court to annul it. The judgment or decree, in favor of the grantee in the deed, operates ' as a complete bar against any and all persons who may thereafter claim such land, in consequence of any informality or illegality in the proceedings.' It is a very great evil in any community to have titles to land insecure and uncertain; and especially in new States, where its result is to retard the settlement and improvement of their vacant lands. Where such lands have been sold for taxes there is a cloud on the title of both claimants, which deters the settler from purchasing from either. A prudent man will not purchase a law suit, or risk the loss of his money and labor upon a litigious title. The act now under consideration was intended to remedy this evil. It is in substance a bill of peace. The jurisdiction of the court over the controversy is founded on the presence of the property; and, like a proceeding *in rem*, it becomes conclusive against the absent claimant, as well as the present contestant. As was said by the court in *Clark* v. *Smith*, 13 Pet. 195, 203, with regard to a similar law of Kentucky : ' A State has an undoubted power to regulate and protect individual rights to her soil, and declare what shall form a cloud over titles; and, having so declared, the courts of the United States, by removing such clouds, are only applying an old practice to a new equity created by the legislature, having its origin in the peculiar condition of the country. The state legislatures have no authority to prescribe forms and modes of proceeding to the courts of the United States; yet having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed be substantially consistent with the ordinary modes

of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as in the state court.' In the case before us the proceeding, though special in its form, is in its nature but the application of a well-known chancery remedy; it acts upon the land, and may be conclusive as to the title of a citizen of another State."

In the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 727, 734, in which the question of jurisdiction in cases of service by publication was considered at length, the court, by Mr. Justice Field, thus stated the law: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.* . . . It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the State, they are substantially proceedings *in rem* in the broader sense which we have mentioned." These cases were all before the decision of *Hart* v. *Sansom.*

Passing to a case later than that, *Huling* v. *Kaw Valley Railway*, 130 U. S. 559, 563, it was held that, in proceedings commenced under a statute for the condemnation of lands for railroad purposes, publication was sufficient notice to a non-resident. In the opinion, Mr. Justice Miller, speaking for the court, says: "Of course, the statute goes upon the presumption that, since all the parties cannot be served personally with such notice, the publication, which is designed

to .meet the eyes of everybody, is to stand for such notice. The publication itself is sufficient if it had been in the form of a personal service upon the party himself within the county. Nor have we any doubt that this form of warning owners of property to appear and defend their interests, where it is subject to demands for public use when authorized by statute, is sufficient to subject the property to the action of the tribunals appointed by proper authority to determine those matters. The owner of real estate, who is a non-resident of the State within which the property lies, cannot evade the duties and obligations, which the law imposes upon him in regard to such property, by his absence from the State. Because he cannot be reached by some process of the courts of the State, which, of course, have no efficacy beyond their own borders, he cannot, therefore, hold his property exempt from the liabilities, duties and obligations which the State has a right to impose upon such property; and in such cases, some substituted form of notice has always been held to be a sufficient warning to the owner, of the proceedings which are being taken under the authority of the State to subject his property to those demands and obligations. Otherwise the burdens of taxation and the liability of such property to be taken under the power of eminent domain, would be useless in regard to a very large amount of property in every State of the Union." In this connection, it is well to bear in mind, that by the statutes of the United States, in proceedings to enforce any legal or equitable lien, or to remove a cloud upon the title of real estate, non-resident holders of real estate may be brought in by publication, 18 Stat. 472; and the validity of this statute, and the jurisdiction conferred by publication, has been sustained by this court. *Mellen* v. *Moline Iron Works*, 131 U. S. 352.

These various decisions of this court establish that, in its judgment, a State has power by statute to provide for the adjudication of titles to real estate within its limits as against non-residents who are brought into court only by publication; and that is all that is necessary to sustain the validity of the decree in question in this case.

Nothing inconsistent with this doctrine was decided in *Hart* v. *Sansom, supra.* The question there was as to the effect of a judgment. That judgment was rendered upon a petition in ejectment against one Wilkerson. Besides the allegations in the petition to sustain the ejectment against Wilkerson, were allegations that other defendants named had executed deeds, which were described, which were clouds upon plaintiffs' title; and in addition an allegation that the defendant Hart set up some pretended claim of title to the land. This was the only averment connecting him with the controversy. Publication was made against some of the defendants, Hart being among the number. There was no appearance, but judgment upon default. That judgment was, that the plaintiffs recover of the defendants the premises described; "that the several deeds in plaintiffs' petition mentioned be, and the same are hereby, annulled and cancelled, and for naught held, and that the cloud be thereby removed;" and for costs, and that execution issue therefor. This was the whole extent of the judgment and decree. Obviously in all this there was no adjudication affecting Hart. As there was no allegation that he was in possession, the judgment for possession did not disturb him; and the decree for cancellation of the deeds referred specifically to the deeds mentioned in the petition, and there was no allegation in the petition that Hart had anything to do with those deeds. There was no general language in the decree quieting the title as against all the defendants; so there was r thing which could be construed as working any adjudication against Hart as to his claim and title to the land. He might apparently be affected by the judgment for costs, but they had no effect upon the title. So the court held, for it said: "It is difficult to see how any part of that judgment (except for costs) is applicable to Hart; for that part which is for recovery of possession certainly cannot apply to Hart, who was not in possession; and that part which removes the cloud upon the plaintiffs' title appears to be limited to the cloud created by the deeds mentioned in the petition, and the petition does not allege, and the verdict negatives, that Hart held any deed."

An additional ground assigned for the decision was that if there was any judgment (except for costs) against Hart, it was, upon the most liberal construction, only a decree removing the cloud created by his pretended claim of title, and therefore, according to the ordinary and undisputed rule in equity, was not a judgment *in rem*, establishing against him a title in the land. But the power of the State, by appropriate legislation, to give a greater effect to such a decree was distinctly recognized, both by the insertion of the words "unless otherwise expressly provided by statute," and by adding: "It would doubtless be within the power of the State in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose." And of course, it follows that if a State has power to bring in a non-resident by publication for the purpose of appointing a trustee, it can, in like manner, bring him in and subject him to a direct decree. There was presented no statute of the State of Texas providing directly for quieting the title of lands within the State, as against non-residents, brought in only by service by publication, such as we have in the case at bar, and the only statute cited by counsel or referred to in the opinion was a mere general provision for bringing in non-resident defendants in any case by publication; and it was not the intention of the court to overthrow that series of earlier authorities heretofore referred to, which affirm the power of the State, by suitable statutory proceedings, to determine the titles to real estate within its limits, as against a non-resident defendant, notified only by publication.

It follows, from these considerations, that the first question presented in the certificate of division, the one heretofore stated, and which is decisive of this case, must be answered in the affirmative.

*The judgment of the Circuit Court is reversed, and the case remanded for further proceedings in accordance with the views herein expressed.*