### REMER v. McKAY et al.

· (Circuit Court, N. D. Illinois. May 3, 1892.)

1. QUIETING TITLE—JURISDICTION—LAND IN ANOTHER STATE.
    A suit to remove an alleged cloud from the title to land may be brought in another state, since the decree compelling the defendant to release the cloud operates only in personam.

2. JUDGMENT—VALIDITY — CONSTRUCTIVE SERVICE — JURISDICTION OF DEFENDANT'S PERSON.
    A decree rendered upon constructive service declaring the holder of the legal title to land to hold the same in trust for his grantor's creditors is void for want of jurisdiction. Arndt v. Griggs, 10 Sup. Ct. Rep. 557, 134 U. S. 316, distinguished.

3. CLOUD ON TITLE—JUDICIAL SALE.
    Where a decree ordering the sale of the interest of a man in land held by his wife is rendered by a court that has no jurisdiction of her person, and a sale is made thereunder purporting to convey the entire estate in the land, such sale constitutes a cloud upon the wife's title.

In Equity. Suit by Chester K. Remer against Duncan McKay and others. A demurrer to the bill was heretofore overruled. 35 Fed. Rep. 86. Decree for complainant.

O. F. Woodruff, for complainant.
Fry & Babb, for defendants.

BLODGETT, District Judge. This is a bill to remove an alleged cloud from the complainant's title to a tract of land in Monona county, in the state of Iowa, the material allegations being that on

the 30th day of July, 1886, complainant purchased the land in question, for a valuable consideration, from Janet R. Remer, and the same was conveyed to him by the said Janet R. Remer and Adam Remer, her husband, whereby complainant became the owner in fee of said land; that on or about the 10th of December, 1881, the said Janet Remer became the owner of said land by virtue of a warranty deed to her, of that date, from one Leander Smith, which deed was duly recorded upon the records of land titles of said county; that, after said Janet had so become seised in fee of said land, Duncan McKay, who was the original and sole defendant in this case, (he having since died, and his executors and heirs having been made defendants by bill of revivor,) caused an attachment suit to be brought in the district court of Monona county against Adam Remer and said Janet Remer, and by the complaint filed in said suit it was charged that said Adam was indebted to the said McKay, upon a promissory note, in the sum of $497.37, and that said Janet was the wife of said Adam; that on or about the 10th day of December, 1881, said Adam sold a farm to one Leander Smith, and took in part payment therefor the tract of land in question, and that said Smith, by request of said Adam, conveyed the land in question to the defendant Janet; that the conveyance to said Janet was without consideration and void, and was caused to be so made with intent to hinder and delay the creditors of said Adam, he (the said Adam) being then deeply involved in debt, wherefore it was prayed that judgment might be rendered against the said Adam for the amount so due, with interest and costs, and that the title to said land be decreed to be held in trust by said defendant Janet, and subject to the payment of said judgment against said Adam; that at the time of so instituting said suit the said plaintiff, Duncan McKay, and the defendants, Adam and Janet Remer, were nonresidents of Iowa, and all resided in the same town in Whiteside county, in the state of Illinois; that, after the commencement of said suit, the said plaintiff, McKay, caused notice to be published requiring defendants to appear and defend at a term of said court to be held on the 18th of September, 1883, and that, unless they did so appear and defend, judgment would be entered by default, which was the only service of process in said suit, and that afterwards, and on the 19th of September, 1883, default was entered in said cause, and a judgment rendered against said Adam for $508.62 and costs, and a special execution ordered to issue for the sale of the interest of defendant Adam in said land; that, in pursuance of said judgment, a special writ of execution, bearing date the 29th of September, 1883, was issued to the sheriff of said county, by virtue of which said sheriff, on the 1st day of November, 1883, sold the said land, and the said Duncan McKay became the purchaser thereof for the sum of $552.21; and that afterwards, and on or about the 3d day of November, 1884, said land not having been redeemed from said sale, the said sheriff made a deed by which he purported to convey said land to said Duncan McKay,—of all which proceedings, it is averred, said Janet had no knowledge until about the 1st of August, 1886. It is also charged that complainant, after acquiring title to said land by a deed from Janet, sold the same for a valuable consideration, and

conveyed the same by a warranty deed to the purchaser, and that said McKay now threatens to take possession of said land under the said sheriff's deed to him, and that, by reason of such threats, the purchaser from complainant threatens proceedings against complainant on his covenants of warranty to said purchaser; that said McKay is not, and has never been, in the possession of said land, but that he refused to release his claim to the same, and that said sheriff's deed is a cloud upon complainant's title, which should be removed for the protection of said complainant against his said covenants of warranty; that said land is vacant and unoccupied, and said McKay, or those claiming under him, have never been in actual possession thereof. The prayer of the bill is that a decree may be entered declaring that the proceedings in said suit of Duncan McKay are void and inoperative as against Janet R. Remer, the owner of said land; that the said deed to Duncan McKay is a cloud upon the title of complainant; and that the sale under said judgment and execution be annulled and set aside; and for general relief. Defendant Duncan McKay demurred to the bill, which demurrer was overruled, and afterwards an answer was filed by leave of court, to which complainant filed a replication, and the case has been brought to hearing upon a stipulation as to the facts which substantially admits the allegations of the bill to be true. The questions raised by the pleadings and submitted by the stipulation are (1) whether this court has jurisdiction to hear and determine this case; (2) whether the district court of Monona county, Iowa, did, in the suit of Duncan McKay against Adam and Janet Remer, by publication only, and without the appearance of the said Janet Remer, acquire such jurisdiction of her in the suit as to authorize the divesture of her title to the land in question; (3) whether, by reason of the defects in said proceedings, the deed to McKay can be attacked by this proceeding; or whether said defects render such deed voidable, and only subject to attack in the court where such proceedings were had or an appellate court.

As to the question whether this court has jurisdiction of the controversy. I can see no reason why the jurisdiction is not complete. The stipulation states that complainant is a citizen of Iowa, and the original defendant a citizen of Illinois, and that the heirs at law and executors of said original defendant are also citizens of different states from that of complainant; and it is also stipulated that the value of the lands in question exceeds $2,000. The decree sought is only to operate in personam upon the defendants, and compel the release of the cloud upon the title to the land in controversy. Although the subject-matter of the controversy is land situated in another state, "while there can be no contention that a court of equity can bind land in a foreign country by its decree, yet it can bind the conscience of the party in regard to land, and compel him to do equity, and to act in good faith." Story, Eq. Jur. §§ 743, 744; Massie v. Watts, 6 Cranch, 148; Briggs v. French, 1 Sum. 504.

As to the second question,—whether the district court of Monona county, Iowa, acquired such jurisdiction in the suit of McKay vs. Adam and Janet Remer, by publication of notice only, and without any personal service of process or notice to said Janet, that it could,

by its judgment or decree, in such cause and proceedings thereunder, divest the said Janet of her title to the land in question. Some consideration was given to this question when the case was before the court on demurrer, (35 Fed. Rep. 88,) and the conclusion there arrived at stated as follows:

"Under the showing made by this bill, the Iowa court had no jurisdiction of Mrs. Remer in the suit, and its judgment and proceedings could not operate to divest her of her interest in this property. While there is no doubt that, if a debtor residing in Illinois holds property, real or personal, in his own name in Iowa, a creditor may attach such property, and, under the provisions of the Iowa statute for constructive service by publication of notice, may clothe the court in which such attachment is brought with jurisdiction to adjudge such property subject to the debts of such owner, yet I know of no judicial proceedings where the apparent owner of property can have his title divested, and his property applied to the payment of another's debt, without personal jurisdiction."

At the time I passed upon this case on demurrer, I was guided by and relied upon Pennoyer v. Neff, 95 U. S. 714; but defendants' counsel now attacks that conclusion, on the authority of Arndt v. Griggs, since decided, and reported in 134 U. S. 316, and 10 Sup. Ct. Rep. 557. I have given the latter case a careful study, and do not think, when considered in the light of its own facts and the Nebraska Code, under which it arises, it disturbs the rule I followed on the demurrer. That was a case brought under the Nebraska Code by a citizen of Nebraska, claiming paramount title to lands in that state, to remove a cloud upon his title, and the defendant holding the title which was alleged to be a cloud on complainant's title was brought into court only by publication of notice, as required by the statute of Nebraska; the statutory provision being as follows:

Section 57, c. 73: "An action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate."

Section 58: "All such pleadings and proofs and subsequent proceedings shall be had in such action now pending or hereafter brought as may be necessary to fully settle or determine the question of title between the parties to said real estate, and to decree the title to the same, or any part thereof, to the party entitled thereto; and the court may issue the appropriate order to carry such decree, judgment, or order into effect."

Section 77, Code Civil Proc.: "And service may be made by publication in the following cases: * * * Fourth. In actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a nonresident of the state or a foreign corporation."

Section 82: "A party against whom a judgment or decree has been rendered without other service than by publication in a newspaper may, at any time within five years after the date of the judgment or order, have the same opened, and be let in to defend."

The whole tenor of the argument, in the vigorous opinion of Mr. Justice Brewer, speaking for the court in that case, is that the power to provide the mode by which conflicting titles to land shall be settled rests in the state within which such lands are situated;

that the state of Nebraska had exercised its right in that regard, and provided how such conflicts of title can be settled in that state; and that the case made by the record came clearly within the provisions of that statute. That case, therefore, as it seems to me, fails to furnish any new rule for the decision of the one now before this court. It may well be that a person holding a title or lien in any form, to land situate in a state, of which he is not a resident, may be held bound to take notice of, or, at least, be on his guard for, an assertion of title to that land by another, as most, if not all, conflicting titles are in some form matters of public record. A nonresident owner of land in a state is also bound to know that his land is liable to be sold for taxes, assessments, or other burdens imposed upon it by the laws of such state, and is chargeable with notice of the public records of land titles where his land is situate, and is thereby put on his guard to watch the proceedings of courts there. But the case before me here is not one of conflicting titles. Janet Remer held the legal title to this land by a conveyance regular upon its face. Whether she held it in fraud of her husband's creditors was a question of fact which did not involve a conflict of title, but involved the question of whether she held her title (the only one extant, so far as this court knows) for her own use, or for the use of her husband or his creditors. In the very nature of the case, it presented a case in personam, where she had the right to be heard in a forum of conscience, which should decide whether her title did or did not originate and rest in fraud. Under the laws of Illinois, a husband may become a debtor to his wife, and, if unable to pay all his creditors, may prefer one to another. So that the mere fact that Adam Remer was heavily involved in debt at the time he caused the conveyance of this land to be made by Leander Smith to his wife does not raise the presumption of fraud; but, even if it did, she had the right to a personal hearing on that question, and the opportunity to explain away any presumption or appearance of fraud before her title could be divested. So far as the principle involved in this case goes, the fact that Janet Remer was the wife of Adam Remer makes no difference, and no different question in law arises here than would have arisen if the title had been made to an entire stranger to Adam Remer. If this proceeding in the Monona district court can be sustained, any person holding lands in the state of Iowa is liable to have his title divested by just such proceedings as this, behind his back. It would be, indeed, presumptious in me to dissent from the decision of the supreme court in Arndt v. Griggs, and I do not intend to be so understood; but I insist that that case does not furnish the rule for this case. That a state can provide the way in which conflicting titles to land, within its territory, can be settled, and bring nonresident holders of conflicting titles before its courts by constructive service, was substantially settled before Arndt v. Griggs, as is clearly shown by Justice Brewer in his opinion in the late case.

As to the third question submitted. I understand it to be merely this: whether defects or errors in the proceeding in the Iowa court can be reviewed or corrected by this bill. I confess I am somewhat at a loss as to how to answer this question, in view of the way it is treated in defendants' brief, where it is said:

"The very fact of the court having ordered the sale of the interest of the defendant Adam Remer in the said premises, necessarily involves the conclusion that the court found and decreed that Janet R. Remer held said premises in trust for Adam Remer, for the use of his creditors; otherwise, there would have been no interest of Adam Remer in the said premises to be ordered sold."

I will, however, say that if Janet Remer was not brought before the court by publication of notice, so as to divest her of her title to the property, then the judgment against Adam Remer, and the order that the land attached be sold to satisfy that judgment, gave the purchaser, Duncan McKay, no title to the land in question; for, by the laws of Iowa, the husband has no interest in the lands of his wife which can be sold on execution during his wife's life; but the execution goes further than the judgment, and directs the sheriff to make the amount of the judgment and costs out of the lands attached, and the sheriff's deed purports to convey the land in question to McKay,—not Adam Remer's interest in it,—so that this sheriff's deed is a cloud upon the title of the land, even if the judgment or decree only directed the sale of Adam Remer's interest in it, because the sheriff, who was McKay's agent, sold and conveyed more than the judgment directed. There was no decree for the sale of the land or Janet Remer's interest therein, but only a decree for the sale of Adam Remer's interest in the land; and hence the sheriff's deed, purporting to convey the land to Duncan McKay, is, in my estimation, not voidable for error, but is wholly void, as not being founded on any decree or judgment. But there is this further reason why this deed should be set aside: Duncan McKay and Adam and Janet Remer lived in the same town in Illinois. McKay could have brought suit on her note, and if he recovered a judgment against Adam Remer, and could not collect it by execution, he could have filed a creditors' bill against Mrs. Remer, and, by personal service, brought her into a court of equity, and had the question determined whether she held this land by a conveyance so unconscionable as to make it chargeable with her husband's debts. But the secret proceeding resorted to so shocks the sense of justice as to require this deed to be set aside on that ground alone. A decree may be entered in accordance with this opinion.