## SALINAS v. JONES.
### No. 419.

District Court, S. D. Texas, Laredo Division.
Aug. 5, 1932.

John L. Dannelley, of San Antonio, Tex., for plaintiff.

T. C. Mann and Mann, Neel & Mann, all of Laredo, Tex., for defendant.

KENNERLY, District Judge.

This is a suit, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, by plaintiff, a citizen or subject of the republic of Mexico, against defendant, a citizen of the United States and of Texas, and a resident of this judicial district (subdivision 1 of

section 41, of title 28, USCA), in trespass to try title under the Texas statutes (articles 7364 to 7401, Texas Revised Civil Statutes of 1925), to recover two tracts of land formerly in Duval county, Tex., but since 1913, and now, in Jim Hogg county, Tex., in this district, and to recover damages. Defendant filed plea of "not guilty" (articles 7372 and 7373), and pleads the Texas three, five, ten, and twenty-five year statutes of limitation. A jury was waived.

It is agreed by the parties that the common source of title (article 7382) is Rafael Salinas and Emilia Salinas, to whom the two tracts were set aside (one, lot 7, to Rafael Salinas, and the other, lot 8, to Emilia Salinas) by a certain decree of the district court of Starr county, Tex., on December 13, 1900, in the partition suit of Vicente Vela et al. v. Eduardo Garcia et al.

■ 1. Since plaintiff must recover upon the strength of his own title (Hooper v. Hall, 35 Tex. 83), the first inquiry is as to plaintiff's title from and under the common source.

■ It is shown that Emilia Salinas, the owner of lot 8, died in 1925, without having married, and without issue, and that she left surviving her one brother of the whole blood, Rafael Salinas, and an illegitimate brother of the half blood; i. e. a son of her father by a woman other than her mother. The title of Emilia Salinas to lot 8 passed, therefore, upon her death, to Rafael Salinas, in the event, but only in the event, both of her parents were then dead. If one parent was then dead, one-half of lot 8 passed to Rafael Salinas. It is incumbent upon plaintiff to account for her parents, and, not having done so, plaintiff, who claims lot 8 under a deed from Rafael Salinas, dated in January, 1928, cannot recover such lot herein. Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S. W. 920.

■ 2. Plaintiff claims lot 7, owned by Rafael Salinas, under such deed from Rafael Salinas to plaintiff. Defendant questions whether the person executing such deed was Rafael Salinas, such owner. In the absence of an affidavit, filed by defendant under article 3726b, Vernon's Annotated Texas Statutes (Acts 1929, 41st Leg., p. 390, c. 179, § 1), raising such issue, the deed is sufficient. Plaintiff is entitled to recover lot 7, unless defendant's title out of the common source is the superior title.

■■ 3. Defendant has a regular chain of title to both lots 7 and 8, from and under

Francis Smith, and the question to be determined is whether Francis Smith acquired the title of Emilia Salinas to lot 8, prior to her death in 1925, and acquired the title of Rafael Salinas to lot 7, prior to his deed to plaintiff in January, 1928.

Defendant offered in evidence:

(a) Decree of the district court of Starr county, Tex., dated December 13, 1900, in cause No. 282, Vicente Vela et al. v. Eduardo Garcia et al., and Francis Smith et al., Interveners. No pleadings were offered, but the decree on its face shows that it was rendered in a suit to partition certain lands in Starr and Duval counties, Tex., of which the lands in controversy are a part. By its terms, title to one of the tracts of land involved herein (lot 7) was awarded to Rafael Salinas, and the other (lot 8) to Emilia Salinas. Other tracts of land were awarded to other parties to the suit. The decree then recites that court costs in the amount of $7,118.31 have been incurred in the suit, and directs that such costs be adjudged against, and paid by, the parties to whom land is awarded by such decree, on the basis, or at the rate of $6\frac{39}{100}$ cents per acre. The amount of costs adjudged against Rafael Salinas was $16.50, and the amount of costs adjudged against Emilia Salinas was $16.50. It is shown by such decree that both Rafael Salinas and Emilia Salinas were then minors, and nonresidents of Texas, i. e., were residents of the republic of Mexico.

The decree then recites that certain of the parties thereto are nonresidents, and provides that the costs taxed against each nonresident shall be a lien on the land awarded to such nonresident, and that, if such costs are not paid within sixty days after the adjournment of the term of court at which such decree is entered, such lien shall be foreclosed, and the clerk of the court shall, at the instance of any officer of the court, or other person interested, issue an order of sale to the proper officer, commanding him to levy upon, seize, and sell so much of the land awarded to each such nonresident as may be necessary to cover such costs so adjudged against him.[1]

[1] "And it appearing to the Court that the aggregate amount of costs herein and heretofore allowed and approved amounts to the sum of Seven thousand one hundred and eighteen dollars and thirty-one cents ($7,118.31/100) and that the respective allotments hereinbefore without exception been valued at and are of the value of One dollar per acre, and whereby the rateable costs for each of the parties herein is at the rate of six and thirty-nine one-hundredths cents per acre, it is ordered, adjudged and decreed that the following persons and shares herein are taxed costs at same rateable proportion,

(b) Defendant offered in evidence an execution and order of sale against Rafael Salinas, sheriff's return thereon, and sheriff's deed thereunder to Francis Smith to lot 7. All are based upon the above-recited provisions of such decree, fixing lien for court costs, directing foreclosure thereof, etc.

(c) Defendant also offered in evidence a similar order of sale against Emilia Salinas, sheriff's return, and sheriff's deed to Francis Smith, covering lot 8, likewise based upon such provisions of such decree.

(d) Defendant also offered in evidence an execution directing a levy on the property of Rafael Salinas and Emilia Salinas, to satisfy a judgment stated to have been rendered against them in such decree, for fees of their guardian ad litem in said cause, amounting to $40. Defendant also offered the sheriff's return on such execution, showing levy by him on such lots 7 and 8, the sale thereof to, and sheriff's deed to, Francis Smith.

4. The last-mentioned execution, sheriff's return, and deed, covering lots 7 and 8, the two tracts of land involved in this suit, may be quickly disposed of, by pointing out that nowhere in such decree is there a judgment rendered against the minors, Rafael Salinas and Emilia Salinas, for $40 as fees of their guardian ad litem. Therefore Francis Smith acquired no title under such execution, sheriff's sale, return, and deed. It is well established in Texas that a sheriff's sale and deed must be supported by a valid judgment. Here no judgment whatever is shown, either directly or by circumstances.

▮ 5. Passing now to the other two sheriff's sales and deeds. The orders of sale,

sheriff's returns, and sheriff's deeds, are regular upon their face, and, if supported by a valid judgment, are sufficient to pass the title of Rafael Salinas to lot 7 and Emilia Salinas to lot 8 to Francis Smith. Plaintiff, however, attacks such decree as being void, in so far as it adjudges such items of costs against Rafael Salinas and Emilia Salinas, fixes same as a lien against this land set aside to them by such decree, and directs the issuance of process to sell same, etc. Plaintiff replies that such decree is not void, but valid, or, at most, that it is only erroneous or voidable.

In considering such decree, it should be borne in mind that it is a decree of a court of another jurisdiction (Cooper v. Newell, 173 U. S. 565, 19 S. Ct. 506, 43 L. Ed. 811; League v. Scott, 25 Tex. Civ. App. 318, 61 S. W. 521; International & G. N. Railway Co. v. Barton, 24 Tex. Civ. App. 122, 57 S. W. 292), and that it may therefore be inquired, whether, in rendering such decree, the court rendering same had jurisdiction of Rafael Salinas and Emilia Salinas.

▮ A partition suit, such as was the suit in which the decree was rendered, is a qualified or limited proceeding in rem. Arndt v. Griggs, 134 U. S. 319, 10 S. Ct. 557, 33 L. Ed. 919. The state had, prior to the entry of such decree, made provision for notice to nonresident parties to such suits. Arndt v. Griggs, supra; article 1230, Texas Revised Civil Statutes of 1895.

▮ Rafael Salinas and Emilia Salinas were nonresidents of Texas; i. e., residents of the republic of Mexico. They were minors. Defendant offered in evidence certified copies of the process issued under such article 1230, and served on them, and the return thereon.[2]

and in a specific amount as follows: * * * Rafael Salinas $16.50; Emilia Salinas $16.50; * * * and that for all of the same in each case where said persons are residents in this State execution may issue. And it being further made to appear that of the said persons in whom shares are vested herein the following are non-residents, to-wit: * * * Rafael Salinas; Emilia Salinas; * * * it is now here ordered, adjudged and decreed that the costs as herein shown respectively taxed against them shall be as is hereby declared to be a lien upon each of their allotments and shares respectively for the amount of their said respective costs, and in the event that the said non-residents or any of them, or their legal representatives or assigns shall fail to fully liquidate and pay off said costs as respectively charged against them within sixty days from and after the adjournment of this regular term of Court, then by force of this decree, and the legal and equitable rateable charge upon said lands for costs of this partition, in each instance of default, the said lien shall be foreclosed; and the clerk of this Court at the instance of any officer of this court or of any other persons interested in said costs, shall in each instance issue an order of sale directly to the Sheriff or other proper officer of the

County where the respective share or shares of such persons in default are situated, commanding him to levy upon and seize so much of the respective share or shares of such non-resident, in default, as may be necessary to make and cover the said rateable costs due therein; and thereafter sell so much thereof in manner and form as under execution sales, as may be necessary to pay off said costs and the costs of such levy and sale, and including therein the costs of deeds to any purchaser of said lands."

[2] The process and return on Emilia Salinas is as follows:

"The State of Texas, To Emelia Salinas, Greeting: Whereas, Francis Smith & N. G. Collins et al., did on the 5th day of December 1899 file in the District Court of Starr County, State of Texas, a Petition in suit No. 282 on the Civil Docket of said Court, being suit brought by Vicente Vela et al., as Plaintiffs against Eduardo Garcia et al. as Defendants, and the nature of the Plaintiff's demand as stated in the said petition being substantially as follows, to wit: Petition in intervention of Francis Smith & N. G. Collins et al. in suit for partition in the Jose Marcelo Hinojosa, fourteen league grant,

Under such process, Emilia Salinas and Rafael Salinas were before the court in such suit for the purpose of the partition of the land involved in the suit. They were represented by guardian ad litem appointed for them by such court. Such court had inherent power, and power, under the Texas statutes (article 3635, Texas Revised Civil Statutes 1895, which relates to costs in partition suits)[3] to, in connection with, and incident to, the partition of such land, dispose of the question of the costs of court. Therefore the judgment rendered, adjudging the costs to be a lien against the respective shares of Rafael Salinas and Emilia Salinas, is not void. It is probably neither voidable nor erroneous. Taliaferro v. Butler, 77 Tex. 578, 14 S. W. 191; Cain v. Hopkins (Tex. Civ. App.) 141 S.W. 834, 840. But I only hold it is not void.

■ It follows that such sheriff's sales and deeds are supported by a valid judgment, and are sufficient to pass the title of Rafael Salinas and Emilia Salinas (the common source) to Francis Smith, under whom

defendant claims. Such title is superior to plaintiff's title out of such common source.

■ 6. Defendant pleads the three, five, ten, and twenty-five year Texas statutes of limitation. The evidence shows that prior to 1905 defendant, with the consent of Francis Smith (from whom he afterwards purchased), included the land involved in this suit in his pasture containing approximately 8,000 acres of land. He thus held for Smith until May 1, 1905, when he purchased such land from Smith by deed of that date. Since such purchase, such land has continued to be, and still is, in the 8,000-acre pasture of defendant. Such pasture has continuously been inclosed by a substantial and permanent fence, and used by defendant for the pasturing and raising of cattle, and has been so continuously used by defendant since May, 1905, and previously during the time he held for Smith. Both Smith and defendant, during the time of such possession, claimed said land as their own against the world, and did not recognize that plaintiff, or any other person, had any claim thereon or interest therein.

Defendant has, before same became delinquent, paid all taxes on such land for each year from and including 1905, down to date. From 1905 to 1913, such taxes were paid in Duval county, where the land was then situated. Since 1913, such taxes have been paid in Jim Hogg county, where the land has been situated since 1913. Defendant's deed from Smith was filed for record and recorded in Duval county, May 10, 1905, and in Jim Hogg county, May 11, 1931.

(a) Defendant has had such possession, and has such a chain of title as is required by the Texas three-year statute of limitation, and his title, under such statute, is unassailable. Articles 5507 and 5508, Texas Revised Civil Statutes of 1925.[4]

---

in Starr and Duval Counties, Texas, and the Diego Hinojosa, Five league grant, in the County of Duval, State of Texas, as will more fully appear by reference to the appended certified copy of said petition in intervention, hereunto attached. And Whereas, the said Petition will be heard in the said District Court of Starr County at Rio Grande City, Texas, on the thirteenth Monday after the first Monday in January, 1900 18— being the second day of April, 1900. 18—. These are, therefore, to require you to appear at the time and place above stated, and answer said Plaintiff's Petition; of which said Petition a certified copy accompanies this notice.

"Attest: P. Nix Clerk of the District Court in and for Starr County, State of Texas, Given under my hand and seal of said Court, at office in Rio Grande City, Texas, this 12th day of March 1900. 18—.

"P. Nix, Clerk District Court Starr Co., Texas
"[L. S.]        By F. J. Cox Deputy.

"United States Consulate General, Monterrey
· "Return.

"State of Nuevo Leon, Republic of Mexico.

"Personally appeared before me, the undersigned authority Blas M. Ybanez who being by me duly sworn, deposes and says, that on the Twentieth day of March 1900 18— at 6 o'clock P. M. in the City of Monterrey, State of Nuevo Leon, Mexico, he delivered to Emilia Salinas, one of the Defendants in person, a true copy of this notice, with a certified copy of the Plaintiff's Petition accompanying same and further that he is an adult male, and is in no manner interested in this suit.

"Blas M. Ybanez.

"Subscribed and sworn to before me, this Twenty first day of March 1900.

"[L. S.]    Philip C. Hanna, United States Consul General for Monterrey and its dependencies in Mexico."

Process and Return on Rafael Salinas is substantially identical.

[3] Article 3635 of the Texas Revised Civil Statutes of 1895 is as follows: "The court shall adjudge the costs in a partition suit to be paid by each party to whom a share has been allotted in proportion to the value of such share."

[4] Articles 5507 and 5508, Texas Revised Statutes of 1925, are as follows:

"Art. 5507. . Suits to recover real estate, as against a person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action accrued, and not afterward."

"Art. 5508. By the term 'title' is meant a regular chain of transfers from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land scrip, with a chain of transfer down to him in possession."

(b) Defendant's deed having been recorded in Duval county on May 10, 1905, and defendant having, in the manner required by law, paid all taxes on the property in controversy from that time to date, such possession and claim is sufficient under the Texas five-year statute of limitation to mature title in defendant thereunder. Article 5509, Texas Revised Civil Statutes 1925;[5] Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S. W. 1139, 1144.

(c) Since the tracts of land in controversy, during the time defendant has had them in possession, have been included in an inclosure of more than 5,000 acres, defendant's claim of title under the ten-year statute of limitation cannot be upheld. Articles 5510 and 5512, Texas Revised Civil Statutes of 1925.[6]

7. Plaintiff also sues defendant for damages for the destruction by defendant of a fence built by plaintiff on the land. Under the ruling as to title, plaintiff was a trespasser and cannot recover damages for the destruction of his fence.

---

[5] Article 5509, Texas Revised Civil Statutes of 1925, is as follows: "Art. 5509. Every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using or enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted with five years next after cause of action shall have accrued, and not afterward. This article shall not apply to one in possession of land, who deraigns title through a forged deed. And no one claiming under a forged deed, or deed executed under a forged power of attorney, shall be allowed the benefits of this article."

[6] Articles 5510 and 5512, Texas Revised Civil Statutes of 1925, are as follows:
"Art. 5510. Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. The peaceable and adverse possession contemplated in this article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually enclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument."
"Art. 5512. Possession of land belonging to another by a person owning or claiming five thousand acres or more of lands inclosed by a fence in connection therewith, or adjoining thereto, shall not be the peaceable and adverse possession contemplated by Article 5510 unless said land so belonging to another shall be segregated and separated by a substantial fence from said lands connected therewith or thereto adjoining or unless at least one-tenth thereof shall be cultivated and used for agricultural purposes or used for manufacturing purposes, or unless there be actual possession thereof."

It is not necessary to discuss other questions presented.

Judgment for defendant will be entered.