These appeals involve the validity and constitutionality of the so-called Grove Act in a case involving the oil, gas and mineral rights to over 10,000 acres of land located in Baldwin County.
In 1942, Denniston-Boykin Company, Inc. and Baldwin Timber and Naval Stores Company, Inc., filed a bill of complaint in the circuit court of Baldwin County, sitting in equity, in which they alleged that they jointly held title in fee simple to the subject lands through various tax sales and other conveyances, and asked the court to quiet title in them. Specifically named as respondents to the in rem proceedings were 83 corporations and individuals whom the complainants believed may have had claims against the subject lands.
Complainants in the 1942 action proceeded under the provisions of the Grove Act, which was originally enacted by the legislature in 1923. Acts of Alabama, 1923, No. 526. (Tit. 7, § 1116, et seq., Code of Ala. 1940; now codified at Code 1975, § 6-6-560, et seq.) The Act has remained substantially unchanged since its original enactment. In 1951, the legislature, among other things, provided for the appointment of a guardian ad litem to represent infants and lunatics in proceedings when indicated. Code 1975, § 6-6-562.
In the original proceeding, service was perfected on all named defendants either by registered mail, personal service or publication.
Among the named defendants were ". . . Southern Plantation Development Company, a corporation; [and] the heirs, representatives and devisees of and all persons claiming under Calvin N. Souther, deceased. . . ."
The bill further alledged:
 ". . . [T]hat said Southern Plantation Development Company is a corporation organized and existing under the laws of the State of Alabama, but Orators are unable to learn where its principal office and place of business is located, after diligent inquiry, though Orators are informed and believe, and therefore allege the fact to be, that respondent Pearl G. Baker, whose address is Foley, Alabama, is its Secretary; that Orators are unable to ascertain, after diligent inquiry, the names, ages and addresses of the heirs, representatives and devisees of and of any persons claiming under said Calvin N. Souther, deceased. . . ."
The complainants properly published a notice of the proceeding for four consecutive weeks in the Baldwin Times, a local newspaper. A decree pro confesso was taken against several of the defendants, including Southern Plantation and those persons claiming under Calvin N. Souther. Several other defendants answered and generally denied the allegations of the complainants. Testimony was then taken by a commissioner, after which the trial court entered its final decree quieting title in the complainants. This Court dismissed the appeal from the 1942 decree. Baker v. Denniston-Boykin Co., 245 Ala. 407,17 So.2d 148 (1944).
H.W. Souther, purportedly as "president" of "Southern Plantation Development Company", as lessor, on April 2 and July 1, 1977, did execute three oil, gas and mineral leases in favor of Johnny May, as lessee. Johnny May and Betty R. May, his wife, then executed assignments of two of these leases to Clayton W. Williams, Jr. on July 4, 1977. All claims under these initial leases were subsequently disclaimed by Williams and May who then obtained leases from various members of the Souther family, including the appellants H.W. Souther, Edwin D. Souther and Calvin N. Souther.
On March 20, 1978, the appellees filed a Motion to Show Cause, under the same *Page 92 
docket number as the 1943 case (the docket number was subsequently changed to a new number, but the style remained the same), and asked the court to enforce its prior decree. The appellees alleged that they are the present owners of the mineral rights to the subject lands as purchasers from the successful complainants in the 1942 action. The appellees requested the court to have the appellants show cause why they should not be held in contempt of court for violation of the 1943 decree; they also asked the court to expunge from the records of the Probate Court of Baldwin County the mineral leases recently executed by persons claiming to have an interest in the minerals; they also requested the court to enter its order enjoining the appellants from asserting any interest in the subject lands.
The appellants' answer and counterclaim to the Motion to Show Cause alleged that the 1943 decree is not binding on them because at that time Southern Plantation had ceased to exist by operation of law and ". . . any purported service over said corporation or any appearance in said case by said corporation was void; [and] that any purported service over and against any successors in interest to Southern Plantation Development Company . . ." was not made pursuant to the law. Appellants further alleged that on May 1, 1921, Southern Plantation conveyed to one C.N. Souther a 50-year mineral deed reserving an interest which ripened into a possessory right of the successors of Southern Plantation on May 1, 1971; that complainants were not diligent in the original proceeding in searching for named defendants; and that the Grove Act, as it existed in 1943, did not afford them their constitutional right of due process.
The case was removed to federal court, but remanded by U.S. District Judge Virgil Pittman upon a finding of a want of jurisdiction.
Appellants made various discovery requests of appellees seeking information related to the issue of whether counsel (Robert P. Denniston) for the original complainants (who is now counsel for one of the appellees), exercised due diligence in searching for C.N. Souther and his heirs.
Appellees filed a motion to strike the answer, the counterclaim and the discovery motions of the appellants on the grounds that, inter alia, the 1943 decree was a final judgment and that they, as successors in interest, are entitled to its benefits. They also contended that the original action complied with the provisions of the Grove Act, and that the appellants, as successors in interest to defendants who were named as parties in the original action, are bound by that judgment.
The cause and all pending motions were set for a hearing on February 22, 1979, before the Hon. Harry J. Wilters, Circuit Judge of Baldwin County. There was no court reporter present at that hearing; therefore, the only record of the hearing is those facts related in the trial judge's report of the "Identification of Evidence, Introduced in these Proceedings" and his final order. The appellees, or "movants" as they are referred to by the trial court, asked the court to take judicial notice of its file of the 1942-3 proceeding, and introduced the various leases which they wanted the court to expunge from the records of the probate court. The appellants presented no evidence. The trial court made the following conclusions of law:
 "1. The 1943 decree is complete and regular on its face, and affirmatively shows compliance with the provisions of the Grove Act and other applicable statutes pertaining to service of process and publication, as constituted at the time thereof.
 "2. The decree on its face held that the two complaining corporations were the true and lawful owners in fee simple of the property described therein. This included the title to all of the oil, gas and minerals in, on and under the said property, and this also included any reversionary interest in the same. The decree, on its face, quieted the title in the complainants to said lands against all persons, firms or corporations claiming any right or title to, interest in, or lien or encumbrance *Page 93 
on said land, or any part thereof. The only appeal of the said decree having been dismissed in the year 1944, and the decree having not been reversed or set aside, remains now in full force and effect.
 "3. This Court has the power to enforce its own judgments and decrees.
 "4. The Movants are entitled to the protection of this Court in the enjoyment of the property rights previously adjudicated in favor of their predecessors in title and adversely to the predecessors in title of the Defendants and intervening Defendants.
 "5. The answers and counterclaims filed by the Defendants and intervening Defendants, to the extent that they seek to attack the validity of and to controvert the findings of fact and other provisions of the 1943 decree in these proceedings brought for its enforcement, are due to be stricken. The motions for discovery, seeking to elicit facts or information in support of such allegations and defenses, are due to be denied.
 "6. The Movants are only some of the numerous and diverse parties whose titles are held in reliance on the 1943 decree. The Defendants have failed and refused to make any attempt to bring before this Court any of the other parties whose interests would be affected by the attack Defendants seek to make on said decree in these proceedings brought for its enforcement. The manner in which they seek to attack said decree is improper and impermissible and the Defendants have failed and refused to initiate appropriate proceedings to attack said decree and bring the parties who would be affected thereby before this Court.
 "7. The motion of Defendants to change the style of this cause is due to be denied.
 "8. The oil, gas and mineral leases listed hereinbelow, having been executed by persons who are successors in interest to parties to the 1943 decree, which parties were determined by that decree to have no right, title, or interest in said lands, are invalid as they pertain to the lands hereinafter described; and the assignments of said leases are therefore likewise invalid as they pertain to said lands, in that they are directly in contradiction with the provisions of the decree."
The trial court granted all relief requested by the appellees with the exception of the prayer to hold the appellants in contempt. The appellants filed a post-judgment motion which alleged, inter alia, that they were denied a trial on the merits and the hearing was no more than a summary proceeding. When the trial court denied this motion, they appealed to this Court.
The issues discussed in this opinion are:
(1) Is the 1943 judgment valid on its face, and not subject to collateral attack?
(2) Is the answer and counterclaim of the appellants a collateral attack on the prior judgment?
(3) Did the Grove Act, as it existed in 1943, violate constitutional due process requirements?
(4) Did the trial court act within its discretion in striking appellants' request for discovery?
Initially, we hold that based on the record presented, the 1943 judgment is valid on its face as there is no patent lack of compliance with the applicable provisions of the Grove Act as it then existed.
This Court distinguished collateral and direct attacks upon prior judgments in Williams v. Overcast, 229 Ala. 119,155 So. 543 (1934), when it opined that a direct attack upon a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of that judgment in a proceeding instituted for that purpose, and that a collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted in an attempt to amend, correct, reform, vacate or enjoin its execution.
In Morris v. Merchants National Bank of Mobile, 267 Ala. 542,103 So.2d 310 (1958), this Court considered an attack against the judgment which had been entered in an in rem proceeding that took place some thirty years earlier: *Page 94 
 "The main question argued by appellants is that the trial court should have allowed them to impeach and show to be void a decree of the equity court of Baldwin County in 1927 quieting title to said Section 38 in Old Spanish Fort Development Company, under whom, by mesne conveyances, appellees claim title. We consider that question was settled in Merchants Nat. Bank of Mobile v. Morris, 252 Ala. 566, 42 So.2d 240, 243, where we held that the bill in equity in the 1927 suit `contained all the statutory allegations to confer jurisdiction' and the `decree adjudged that they existed'; that `by statute the decree has binding effect on persons not parties, if all the requirements are observed'; Tit. 7, § 1127, Code 1940; that `one cannot collaterally attack a domestic judgment valid on the face of the record' but `he is confined to a direct attack, sometimes by a suit in equity in the nature of a bill of review', or `section 1128, Title 7, Code,' or `sometimes under the four months statute'; that the trial court erred in giving a charge which had the effect of permitting the equity decree to be impeached, and that the appellants there, appellees here, were due the affirmative charge. We see no reason to depart from our holding in that case."
We hold that the answer and counterclaim of the appellants constituted an attempt to avoid the binding force of the prior judgment and is, therefore, in the nature of a collateral attack. Appellants made no claim that complainants, in the 1943 proceeding, had perpetrated some form of legal fraud upon the court; therefore, we find that the appellants made no direct attack upon the 1943 decree.
Appellants do claim that they are not bound by the prior decree because the court, in 1943, did not have jurisdiction over them because the complainants, in 1942, failed to exercise due diligence in attempting to effect personal service on them. There is nothing in the record of the 1942 proceeding which indicates the complainants in that case did not, in fact exercise due diligence. Consequently, the findings and conclusions of the trial court are not palpably erroneous. We conclude that the court had jurisdiction of the parties through whom the appellants claim an interest (either Southern Plantation or Calvin N. Souther, or his heirs if he was deceased in 1942).
The court also had subject-matter jurisdiction of any reversionary interest in the minerals. The Grove Act, as originally enacted, was adopted for the purpose of clearing "up all doubts or disputes concerning [land titles]." The judgment entered in 1943 purports to do that. A judgment which is regular on its face and indicates subject matter and personal jurisdiction is conclusive on collateral attack. A.B.C. TruckLines v. Kenemer, 247 Ala. 543, 25 So.2d 511 (1946); Dothard v.Ridgeway, 54 Ala. App. 429, 309 So.2d 468 (1975).
One of appellants' main claims is that the Grove Act, as it existed in 1943, did not meet constitutional due process requirements because it did not require the appointment of a guardian ad litem to represent the interests of unknown defendants. We disagree. The Supreme Court of the United States considered the general constitutionality of a statute very similar to the Grove Act in Arndt v. Griggs, 134 U.S. 316,10 S.Ct. 557, 33 L.Ed. 918 (1890). The court opined:
 "* * * The question is not what a court of equity, by virtue of its general powers and in the absence of a statute, might do, but it is, What jurisdiction has a State over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts, to determine the validity and extent of the claims of nonresidents to such real estate? If a State has no power to bring a nonresident into its courts for any purposes by publication, it is impotent to perfect the titles of real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a nonresident will remain for all time a cloud, unless such nonresident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend *Page 95 
the sovereignty of the State. It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subject to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a nonresident within its limits — its process goes not out beyond its borders — but it may determine the extent of his title to real estate within its limits; and for the purpose of such determination may provide any reasonable methods of imparting notice. The well-being of every community requires that the title to real estate therein shall be secure and that there be convenient and certain methods of determining any unsettled questions respecting it. The duty of accomplishing this is local in its nature; it is not a matter of national concern or vested in the general government; it remains with the State; and as this duty is one of the State, the manner of discharging it must be determined by the State, and no proceeding which it provides can be declared invalid, unless it conflicts with some special inhibitions of the Constitution, or against natural justice."
It appears that the original proceeding was conducted in conformity with the provisions of the Grove Act which were in effect at that time. In 1942-1943, there was no requirement for the appointment of a guardian ad litem, a provision added in 1951, and found at Title 7, Section 1117 (1), Code of Alabama 1940.
The legislature, in 1951, in its wisdom, made a number of changes in the Grove Act, including the addition of a requirement for the appointment of a guardian ad litem to represent and defend the interest of infants, lunatics or unknown parties in the proceedings. Appellants claim that the absence of a provision of the appointment of a guardian ad litem in 1942 for unknown parties made the Grove Act constitutionally infirm. We cannot agree. We are of the opinion that the absence of this provision in the original legislation did not render the act unconstitutional. Arndt v. Griggs,supra.
The appellants claim that it was reversible error for the trial court, on motion of the appellees, to strike the discovery motions the appellants made in support of their attack on the 1943 decree. We do not think so. Under Rule 26 (b)(1), ARCP, discovery may be obtained as to matter which is relevant to the subject matter involved in the pending action, and it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Appellees take the position that the information sought by discovery on the part of the appellants in this case was not reasonably calculated to lead to the discovery of admissible evidence, because the appellants were not entitled, as a matter of law, to the relief sought by their counterclaims. As we have indicated, the attack made on the 1943 decree was collateral in nature, and we conclude that the trial court did not abuse its broad powers to control the use of the discovery process in this case. The discovery rule does not allow an arbitrary limit on discovery; instead, it vests the trial court with judicial discretion in the discovery process. The questions on review, then, becomes one of whether, under all the circumstances, the court has abused its discretion. Assured Investors Life Insurance Co. v. NationalUnion Associates, Inc., 362 So.2d 228, 231 (Ala. 1978).
In view of all that we have said, we conclude that the 1943 decree was valid and regular on its face, and was rendered in conformity with the Grove Act, which we hold was constitutional. The decree was against all the world, including any predecessors in title of the appellants. It is not subject to collateral attack, as attempted by appellants.
Any direct attack upon the 1943 decree under Rule 60 (b), if maintainable, would have to conform with general principles of equity. We note, that under the facts of this case, the 1943 decree, in equity, should *Page 96 
now be immune from any attack, except on a ground that a fraud was practiced upon the court. The trial court, in this proceeding, has examined the original decree again and the appellants have neither alleged nor proved that any fraud was perpetrated upon the court by the parties in the 1942-1943 action. In the absence of the most compelling of circumstances, we believe that the 1943 decree should stand.
For the foregoing reasons, the decree of the trial court in this proceeding is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.