FIRST ALABAMA BANK OF MONTGOMERY, N.A., and Edward Herbert, Plaintiffs-Appellees,

v.

PARSONS STEEL, INC., Jim D. Parsons, Melba L. Parsons, and Parsons Steel Industries, Inc., Defendants,

Tom McGregor, as Trustee in Bankruptcy for Parsons Steel Industries, Inc., Defendant-Appellant.

FIRST ALABAMA BANK OF MONTGOMERY, N.A., and Edward Herbert, Plaintiffs-Appellees,

v.

PARSONS STEEL, INC., Jim D. Parsons, Melba L. Parsons, and Parsons Steel Industries, Inc., Defendants-Appellants,

Tom McGregor, as Trustee in Bankruptcy for Parsons Steel Industries, Inc., Defendant-Appellant.

Nos. 85–7343, 86–7506.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1987.

James Jerry Wood, James T. Sasser, Montgomery, Ala., for McGregor.

Donald R. Harrison, Montgomery, Ala., for Parsons, et al.

James A. Byram, Jr., Steiner, Crum & Baker, M. Roland Nachman, Jr., Balch & Bingham, Montgomery, Ala., for plaintiffs-appellees.

Before HILL and JOHNSON, Circuit Judges, and HENLEY,* Senior Circuit Judge.

JOHNSON, Circuit Judge:

This consolidated appeal challenges the propriety of the district court's continuance of an injunction issued in favor of Appellees, First Alabama Bank ("First Alabama") and bank officer Edward Herbert against further prosecution of a state court action filed against Appellees by Appellants Parsons Steel, Inc. ("Parsons-Mobile"), Jim D. and Melba Parsons ("Parsons"), and Tom McGregor, trustee in bankruptcy of Parsons Steel Industries, Inc. of Montgomery ("Parsons-Montgomery") in the Circuit Court of Montgomery County, Alabama.[1] All Appellants challenge the district court's order continuing the injunction in force. McGregor also appeals the district court's order refusing to modify the injunction to allow him to pursue a UCC claim in state court. We affirm.

## I. BACKGROUND

This case arises out of a series of bank transactions involving First Alabama and

---

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. *Parsons Steel Industries, Inc. v. First Alabama Bank of Montgomery, N.A.*, Civil Action No. CV–79–179–G.

Parsons-Montgomery, a wholly owned subsidiary of Parsons-Mobile, ninety-nine percent of the stock of which is in turn owned by Parsons. This is the third time this Court has been called upon to review judgments in litigation arising out of those transactions.

In the fall of 1978, Parsons-Montgomery owed First Alabama one million dollars in secured debt. Anticipating that Parsons-Montgomery would not be able to pay this debt, Parsons and First Alabama discussed possible refinancing or sale of the business. After one attempt to sell failed, First Alabama contacted one of its customers, Michael Orange. Orange did not want to purchase the company but agreed with Parsons in December 1978 to manage the company for a fee and stock option. Orange soon resigned, and First Alabama commenced foreclosure proceedings against Parsons-Montgomery in January 1979 and sold its assets at a private sale to OSI, Inc., Orange's corporation, for the amount of the outstanding debt.

On February 15, 1979, Parsons-Montgomery, Parsons-Mobile, and Parsons filed suit in Alabama circuit court against First Alabama, Herbert, Orange and OSI, alleging that First Alabama fraudulently forced Parsons to allow Orange to take control of Parsons-Montgomery, and eventually to obtain complete ownership of the company. Orange and OSI eventually were dismissed from the suit pursuant to a pro tanto settlement in January, 1983.

On April 5, 1979, Parsons-Montgomery was adjudicated an involuntary bankrupt. On May 30, 1979, Parsons-Mobile and Parsons filed suit in federal court against First Alabama alleging that the same actions of First Alabama that gave rise to the state law suit violated the Bank Holding Company Act, 12 U.S.C.A. §§ 1971 to 1978 ("BHCA"). Parsons-Montgomery and its

trustee were not original parties to the federal action, and the trustee chose not to join the action. The trustee was made a party to the state court action pursuant to First Alabama's motion alleging that he was an indispensable party. The trustee participated in joint discovery that was designated for use in both the state and federal action.

The federal action was bifurcated and proceeded to judgment before the state action. After a jury verdict in favor of the plaintiffs, the district court entered a judgment n.o.v. for First Alabama in June 1981. This Court affirmed. *Parsons Steel, Inc. v. First Alabama Bank of Montgomery*, 679 F.2d 242, 246 (11th Cir.1982) (*"Parsons I"*). Appellees asserted the federal judgment as res judicata in the state action through motions to dismiss and for summary judgment, which were denied by the state court. On June 11, 1982, the trustee filed an amended complaint in the state action which alleged for the first time that First Alabama's sale of the assets of Parsons-Montgomery was commercially unreasonable in violation of Article 9 of the Uniform Commercial Code ("UCC claim"). Shortly before the state trial was scheduled to begin, the state court entered an order *in limine* stating that the res judicata issue was not appropriate for presentation to the jury.[2] The state trial commenced January 31, 1983. Appellees moved for directed verdict at the close of the plaintiffs' case and at the close of all the evidence, asserting res judicata and collateral estoppel. Both motions were denied. The jury returned a verdict for Appellants in the amount of $4,000,001.00. On February 24, 1983, Appellees filed motions for judgment n.o.v. and new trial, asserting as one basis for judgment n.o.v. the preclusive effect of the prior federal judgment.

On March 7, 1983, Appellees filed a complaint in federal court seeking to enjoin

---

**2.** The order indicated that the state court was "of the general impression that the issue of res judicata is an issue properly to be decided by the Court rather than an issue to be presented to and decided by the jury" and that "[t]his proposition would be especially true where, as in the

instant case, the factual issues have been fully presented to the Court in the course of Motions to Dismiss, Motion for Summary Judgment and Motion for Reconsideration of Motion for Summary Judgment and that the facts as regards the issue of res judicata are clearly undisputed."

further prosecution of the state court action on the basis of res judicata and collateral estoppel. On June 15, 1983, the district court enjoined further prosecution of the state court action by Appellants, finding that the claims raised in the state court proceeding should have been raised in the federal proceeding and that the trustee, although not a party to the federal action, was in privity with those parties and, therefore, bound by the judgment in the prior federal action as well. At the time of issuance of that injunction, Appellees' motions for judgment n.o.v. and for a new trial were still pending in the state court action. The state court stayed the action in accordance with the injunction on July 6, 1983.

This Court affirmed the district court's decision, except with regard to the district court's determination that the trustee was precluded by the prior federal action from pursuing his UCC claim. *First Alabama Bank of Montgomery v. Parsons Steel, Inc.,* 747 F.2d 1367, 1381 (11th Cir.1984), *rev'd,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986) (*"Parsons II"*). The Court remanded that issue to the district court "for further fact findings to determine whether the injunction should be modified to allow the Trustee to pursue his UCC claim based only on the actual foreclosure sale." *Id.* The *Parsons II* Court held that issuance of the injunction was proper under the relitigation exception to the Anti-Injunction Act,[3] which generally prohibits a federal court from enjoining state proceedings, but excepts from that prohibition, *inter alia,* injunctions "necessary ... to protect or effectuate its judgments." *Id.* at 1375. The Court found that the district court's independent determination as to the res judicata effect of the BHCA action was not precluded by the state court's prior determination of that issue because the relitigation exception to the Anti-Injunction Act modified the Full Faith and Credit Statute[4] so that "while a federal court is generally bound by other state court determinations, the relitigation exception empowers a federal court to be the final adjudicator as to the res judicata effects of its prior judgments on a subsequent state action." *Id.* at 1375–76.

The Supreme Court reversed. *Parsons Steel, Inc. v. First Alabama Bank of Montgomery,* 474 U.S. 518, 106 S.Ct. 768, 773, 88 L.Ed.2d 877 (1986) (*"Parsons III"*). It rejected this Court's analysis of the effect of the relitigation exception to the Anti-Injunction Act on the Full Faith and Credit Statute, finding that the two provisions could be read consistently by "limiting the relitigation exception of the Anti-Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue" and that "[o]nce the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision." *Id.* at 772. The Supreme Court thus found that this Court had erred in failing to consider the possible preclusive effect under Alabama law of the state-court judgment. *Id.* It further found that the district court was in the best position to determine and apply Alabama preclusion law in the first instance and, if the district court found that the state-court judgment was not entitled to preclusive effect under Alabama law and the Full Faith and Credit Act, "it would then be in the best position to decide the propriety of a federal-court injunction under the general principles of equity, comity, and federalism...." *Id.* at 773.

---

**3.** The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283.

**4.** The Full Faith and Credit Statute provides in pertinent part that "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C.A. § 1738.

In accordance with the Supreme Court's decision, this Court issued its mandate reversing the district court judgment and remanding for further proceedings in conformity with the Supreme Court opinion. *First Alabama Bank of Montgomery v. Parsons Steel, Inc.*, 785 F.2d 929 (11th Cir.1986). On remand, the district court found that Alabama law did not give preclusive effect to the state court's determination of the res judicata issue because there was no final judgment in that action and that an injunction was proper under principles of equity, comity and federalism. It therefore ordered that its injunction continue in force. The district court also denied Parsons' motion requesting that the judge recuse himself. These determinations are the subject of the appeal in No. 86–7506.

By an earlier order, the district court had determined that the trustee's UCC claim arose out of pre-sale matters regarding the actions of First Alabama and Orange that should have been raised in the federal action and therefore had declined to modify its injunction to allow the trustee to pursue a UCC claim on behalf of Parsons-Montgomery. That order is the subject of the appeal in No. 85–7343. Also pending before this Court is Appellants' motion to supplement the record on appeal.

## II. DISCUSSION

### A. Finality of State Court Determination of Res Judicata Issue

The preclusive effect of the federal action was raised in the state court action by Appellees through motions to dismiss, motions for summary judgment and motions for directed verdict, all of which were denied. The district court held that these rulings were not final judgments entitled to preclusive effect under Alabama law. The district court found that the issue was still pending before the state court in connection with Appellees' motions for judgment

notwithstanding the verdict or for a new trial at the time the district court issued its injunction. Because the district court concluded that finality for purposes of appeal and for purposes of determining preclusive effect are equated under Alabama law, that court held that the pendency of these post-trial motions prevented the state determination from having a preclusive effect because an appeal could not be taken until resolution of the post-trial motions. We find no error in the district court's determination of this issue.

■■■■ The Full Faith and Credit Act requires that a federal court give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered. *Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1473 (11th Cir.1985). Under Alabama law, res judicata and collateral estoppel principles do not apply until there is a final judgment rendered on the merits of the case. *Food Service Distributors, Inc. v. Barber*, 429 So.2d 1025, 1027 (Ala. 1983); *accord, Owen v. Miller*, 414 So.2d 889, 890–91 (Ala.1981); *Pooley v. State*, 470 So.2d 1337, 1339 (Ala.Crim.App.1985). Denial of a motion for summary judgment is not a final judgment. *Barber*, 429 So.2d at 1027. Nor does such a denial become the law of the case: "a court may reconsider its ruling on a motion for summary judgment and may correct an erroneous ruling at any time before final judgment." *Id.* Therefore, denial of Appellees' motions for summary judgment was not a final adjudication of the preclusion issue.

There is no Alabama law on the question of whether a jury verdict is considered a final judgment for preclusion purposes when it is rendered nonappealable by the pendency of post-trial motions. It appears, however, that the district court was correct in its determination that Alabama equates finality for purposes of preclusion with appealability.[5] In *Sterling Oil of Oklahoma, Inc. v. Pack*, 291 Ala. 727, 287 So.2d 847

---

**5.** This is the federal rule. J. Moore, 1B Moore's Federal Practice para. 0.416[3], at 519–520 (2d ed. 1984) (finality for res judicata purposes is "closely related to that for appealability under

(1973), the Alabama Supreme Court, noting that the test was the finality of the judgment, found that it was required to give preclusive effect to a district court's grant of partial summary judgment on the issue of whether appellant was qualified to do business because the grant of summary judgment, although interlocutory, was appealable. *Id.* at 861. The court stated:

> We have been cited to no persuasive authority, and we have found none, on either side of this issue. We believe the appealable nature of such order—given the other prerequisites—is the controlling factor; and we, therefore, hold that the principle of comity requires that we give res judicata effect to the judgment of the federal court, applying Alabama substantive law, holding on its merits that the [contract] is not void for failure ... to qualify as a foreign corporation

..., which judgment was neither revoked, amended, nor reversed on appeal. *Id.*

■ The judgment entered pursuant to the jury verdict in the state action in this case was not final for purposes of appeal during the pendency of the judgment n.o.v. and new trial motions. *See* A.R.A.P. 4(a)(3); *Spina v. Causey*, 403 So.2d 199, 201 (Ala.1981). Therefore, the district court did not err in finding that there was no final judgment for preclusion purposes under Alabama law. *Cf. Cable Holdings*, 764 F.2d at 1473 (district court erred in giving res judicata effect to state court judgment not final for purposes of appeal under Georgia law when it appeared that Georgia measured finality for res judicata purposes by same standard as finality for appeal).[6]

the final judgment rule of 28 U.S.C. § 1291"). Nonappealable interlocutory orders are not entitled to collateral estoppel or res judicata effect. *Id.* at 520. Professor Moore notes that, on analogous reasoning, post-trial motions that destroy the finality of the judgment for purposes of appeal, such as a motion for judgment n.o.v., also should destroy the preclusive effect of the judgment. *Id. But see Hubbell v. United States*, 171 U.S. 203, 210, 18 S.Ct. 828, 831, 43 L.Ed. 136 (1898) (dicta expressing doubt as to whether motion for new trial would prevent preclusive effect). The Restatement (Second) Judgments takes the opposite position: "A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment nonfinal." Restatement (Second) Judgments § 13, Comment f (1980).

6. Appellants make several arguments as to why the judgment in the state action should be considered final. We find these arguments unpersuasive. First, Appellants argue that Alabama would consider a judgment in this posture final for other purposes, such as measuring the date from which interest would run. However, whatever may be the criteria for determining the finality of a judgment for other purposes, *Sterling* clearly indicates that appealability is the criterion under Alabama law for determining a judgment's finality for preclusion purposes. Second, Appellants point to statements of the trial judge which they argue indicate that he viewed his decision of the res judicata issue

as final in the sense that he did not plan to change his mind, and they take issue with the district court's determination that the trial judge had reserved the res judicata issue for determination in connection with the motion for judgment n.o.v. Whether the trial judge in the state action intended to change his decision with regard to the res judicata issue upon reconsideration of that issue in connection with Appellees' motions for judgment n.o.v. is not determinative of the question of whether the judgment was final for preclusion purposes. As discussed above, the Alabama rule is that a judgment is not final for preclusion purposes until it is appealable. Third, Appellants argue that the res judicata issue could not be raised in connection with a motion for directed verdict or for judgment n.o.v. because the only issue for consideration in connection with these motions is the sufficiency of the evidence to support the jury's verdict. Alabama courts, however, have held a directed verdict or motion for judgment n.o.v. proper on the basis of an issue of law that is appropriate for decision by the judge rather than the jury. *E.g., Saxon v. Johnson*, 393 So.2d 1007, 1010–11 (Ala.App.1980), *cert. denied sub nom. Ex parte Johnson*, 393 So.2d 1012 (Ala. 1981) (directed verdict should have been granted on basis of interpretation of deed, which was issue reserved for decision by judge in pretrial order). Finally, Appellants argue that Appellees' federal suit was a collateral attack on a final judgment prohibited under Alabama law. *See Williams v. First National Bank of Mobile*, 384 So.2d 89, 94 (Ala.1980). This argument, however, assumes the existence of a final judgment in the state court action and, therefore, begs the question. The mere pendency of two suits involving the same subject matter does not

B. Considerations of Equity, Comity and Federalism

1. *Younger* Abstention

The Supreme Court stated that "[s]hould the District Court conclude that the state-court judgment is not entitled to preclusive effect under Alabama law and the Full Faith and Credit Act, it would then be in the best position to decide the propriety of a federal-court injunction under the general principles of equity, comity, and federalism discussed in *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972)." *Parsons III,* 106 S.Ct. at 773. In *Mitchum,* the Supreme Court held that section 1983 came within the "expressly authorized" exception contained in the Anti-Injunction Act, but noted that "[i]n so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." 407 U.S. at 243, 92 S.Ct. at 2162. The *Mitchum* Court stated that "[t]hese principles, in the context of state criminal prosecutions, were canvassed at length ... in *Younger v. Harris.*" *Mitchum,* 407 U.S. at 243, 92 S.Ct. at 2162 (citation omitted).

■ The district court interpreted the Supreme Court's mandate in *Parsons III* as requiring that the district court measure the appropriateness of an injunction in this case under the standards established by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), for enjoining state criminal prosecutions. Under *Younger,* a federal court should abstain from enjoining an ongoing state criminal proceeding absent a showing of bad faith prosecution or harassment or a showing that the challenged statute is flagrantly and patently violative of express constitutional prohibitions. *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55; *accord, Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct.

1200, 1211, 43 L.Ed.2d 482 (1975). Proceeding on the assumption that an injunction of the state court action in this case would be appropriate only if this case came within one of the narrow exceptions to the *Younger* doctrine, the district court found that Appellants had engaged in harassment and bad faith sufficient to justify issuance of an injunction.

We need not reach the issue of whether the district court was correct in its determination that Appellants' actions amounted to bad faith and harassment because we find that the *Younger* doctrine is not applicable on the facts of this case. As discussed above, *Younger v. Harris* dealt with the propriety of a federal injunction against ongoing state criminal proceedings. In the civil context, the comity principles embodied in the *Younger* doctrine have been held applicable when "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). *See, e.g., id.* 107 S.Ct. at 1527 (state interest in execution of state judgments); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (state civil rights commission action to vindicate state interest in elimination of sex discrimination); *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 434, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982) (important state interest in maintaining and assuring the professional conduct of attorneys it licenses); *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979) (child custody proceedings "in aid of and closely related to criminal statutes"); *Juidice v. Vail,* 430 U.S. 327, 335–36, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) (vital state concern in enforcement of contempt proceedings); *Trainor v. Hernandez,* 431 U.S. 434, 444,

---

create a preclusive bar until final judgment in one of them. *Logan v. O'Barr,* 122 So.2d 376, 380 (Ala.1960). Further, under Alabama law, a

suit to enjoin the execution of a judgment is considered a direct, not a collateral, attack on the judgment. *Williams,* 384 So.2d at 93.

97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (suit and accompanying writ of attachment brought by state to vindicate important state policies such as safeguarding the fiscal integrity of public assistance programs); *Huffman*, 420 U.S. at 609, 95 S.Ct. at 1210 (proceeding pursuant to state nuisance statute "in aid of and closely related to criminal statutes"). Thus, it is only civil proceedings "in which important state interests are involved" that warrant abstention under the *Younger* doctrine. *Moore*, 442 U.S. at 423 & n. 8, 99 S.Ct. at 2378 & n. 8 ("we do not remotely suggest that every pending proceeding between a State and a federal plaintiff justifies abstention unless one of the exceptions to *Younger* applies"); *accord, Cate v. Oldham*, 707 F.2d 1176, 1183 (11th Cir.1983) ("Application of the *Younger* doctrine to ongoing state civil proceedings has been limited to those civil actions in aid of criminal jurisdiction or involving enforcement-type proceedings in which vital interests of the state *qua* state are involved.").

■ Therefore, the initial inquiry in determining whether a federal court should abstain when asked to enjoin an ongoing state civil proceeding is whether an important governmental interest of the state is implicated by that civil action so that such an injunction would be "an offense to the State's interest ... likely to be every bit as great as it would be were this a criminal proceeding." *Juidice*, 430 U.S. at 336, 97 S.Ct. at 1217 (quoting *Huffman*, 420 U.S. at 604, 95 S.Ct. at 1208). Because the district court interpreted the Supreme Court mandate as requiring application of *Younger,* the district court did not make this threshold inquiry as to whether an important state interest was implicated in this case. We do not read the Supreme Court's mandate as dispensing with this threshold inquiry. Instead, the Supreme Court's mandate merely states, as did the opinion in *Mitchum,* that the fact an injunction may be permissible under an exception to the Anti-Injunction Act does not mean that the district court should not also con-

sider whether such an injunction is appropriate under the principles reflected in the *Younger* doctrine.

■ Our consideration of this threshold inquiry leads us to conclude that *Younger* abstention is not appropriate in this case because the state court action enjoined by the district court does not implicate any important government interest of the State of Alabama. The importance of a state interest may be demonstrated by the fact that the proceedings sought to be enjoined are noncriminal proceedings bearing a close relationship to criminal proceedings or by the fact the proceedings are necessary for the vindication of important state policies or the functioning of the state judicial system. *Middlesex Ethics Comm'n*, 457 U.S. at 432, 102 S.Ct. at 2521. Alabama is not a party to the action enjoined in this case, nor was that action brought to vindicate important interests of that State. Similarly, the action does not implicate the State's "important interests in administering certain aspects of [its] judicial system[ ]." *Pennzoil*, 107 S.Ct. at 1527. The state court action involved in this case was merely a private action between private parties in which the State of Alabama had no interest beyond "its interest as adjudicator of wholly private disputes." *Id.* at n. 12. Therefore, we find that the *Younger* doctrine did not require that the district court abstain from issuing the injunction against further state court proceedings.

## 2. Propriety of the Injunction

"[T]he phrase 'to protect or effectuate its judgments' authorize[s] a federal injunction of state proceedings only 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Parsons III*, 106 S.Ct. at 773 (quoting *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970)). Further, accommodation of the state and federal interests involved when a federal

court is asked to enjoin a state court proceeding has led to the requirement that the party seeking the injunction must make a "strong and unequivocal showing of relitigation." *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582, 585–86 (11th Cir.1983). In *Parsons II*, this Court found that Appellees had made the requisite showing in this case. 747 F.2d at 1375. We find no reason to alter that conclusion.

■ Appellants assert that the district court's injunction was improper in light of the Supreme Court's decision in *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). We cannot agree. While the Supreme Court noted in *Parsons III* that the present action was "similar to *Atlantic Coast Line*, in which we held that the various exceptions to the Anti-Injunction Act did not permit a federal court to enjoin state proceedings in circumstances more threatening to federal jurisdiction than the circumstances of this case," *id.* 106 S.Ct. at 772–73, that statement certainly was not tantamount to a holding by the Supreme Court that the injunction in this case was improper. The Supreme Court clearly did not reach the issue of the propriety of the injunction in *Parsons III*. Further, given our determination that the state court judgment in this case was not final for preclusion purposes, *Atlantic Coast Line* clearly is distinguishable from the present case.

*Atlantic Coast Line* involved a federal court order enjoining enforcement of a prior state injunction which prohibited picketing by the Brotherhood of Locomotive Engineers ("BLE") at a switching yard known as Moncrief Yard, which was owned and operated by Atlantic Coast Line Railroad ("ACL"). ACL originally had sought an injunction in the federal district court, but that court had denied relief. ACL then obtained an injunction in state court. Two years after the state court had issued its injunction, the Supreme Court rendered its decision in *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*,

394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), which considered the validity of picketing by the BLE and other unions at a location directly next to Moncrief Yard and held that the unions had a federally protected right to picket that could not be interfered with by state court injunctions. BLE filed a motion in state court to dissolve the injunction as improper under *Jacksonville Terminal*, which was denied. Instead of appealing that denial, BLE sought an injunction of enforcement of the state injunction in federal court, and the district court granted the injunction. BLE argued that the district court's injunction was proper under the Anti-Injunction Act either as necessary to protect or effectuate the district court's prior denial of an injunction of the picketing or as necessary in aid of its jurisdiction, another exception to the Anti-Injunction Act. *Atlantic Coast Line*, 398 U.S. at 283–84, 90 S.Ct. at 1741.

BLE's argument that the injunction was proper under the relitigation exception was based on its contention that the district court had determined in its original order denying ACL's request for an injunction that BLE had a federally protected right to picket Moncrief Yard that could not be interfered with by the state courts. *Id.* at 288, 90 S.Ct. at 1744. The Supreme Court rejected that interpretation of the district court's original judgment, concluding instead that what BLE sought to protect by the federal court injunction was not the district court's original judgment, but the "amplification" of that judgment provided by the intervening decision in *Jacksonville Terminal*. *Id.* at 293, 90 S.Ct. at 1746. The Court stated that "[s]uch a modification of an earlier order through an opinion in another case is not a 'judgment' that can properly be protected by an injunction against state court proceedings." *Id.* The Court found that the union was in effect seeking federal appellate review of the state court determination that *Jacksonville Terminal* did not require that the state court injunction be dissolved. *Id.*

*Atlantic Coast Line* is distinguishable from the present case in at least two re-

spects. First, the issue of whether res judicata barred relitigation of issues that could have been raised in the original federal action was not presented in *Atlantic Coast Line*. The union in *Atlantic Coast Line* did not argue that the federal injunction was proper because the issue of whether the federal right to picket precluded state court injunctions could have been raised in the prior federal proceeding. Instead, BLE argued that question had in fact been decided in the prior proceeding, and the Supreme Court rejected that contention on the record before it. In the present case, however, this Court affirmed the district court's finding that the issues raised in the state court proceeding should have been raised as pendent claims in the BHCA action and therefore were barred under res judicata principles. *Parsons II*, 747 F.2d at 1374, 1379. Precedent binding on this Circuit clearly holds that "a federal court may enjoin a state court proceeding which is precluded under the doctrine of res judicata." *Woods Exploration & Producing Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1312 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30

L.Ed.2d 736 (1972). We find nothing inconsistent between that precedent and the Supreme Court decision in *Atlantic Coast Line*.[7]

Second, unlike the situation in *Atlantic Coast Line*, the present case does not involve an improper attempt to seek federal appellate review of a state court decision. As discussed above, the state court determination that the failure to raise the state claims in the BHCA action did not operate as a bar to raising the claims in the state action was not final at the time the district court issued its injunction in this case. Thus, although Appellees waited until a late point in the state court proceeding to seek an injunction, they did so before the state court had made a final determination with regard to the preclusion issue.[8] In *Atlantic Coast Line*, however, the state court's denial of BLE's motion to dissolve was final, and BLE chose to seek an injunction in federal court rather than appealing that decision, thereby, in effect, attempting to obtain improper appellate review of the state court decision by the federal court.

■ We also find without merit Appellants' argument that the injunction was

7. In support of their position, Appellants point to language in *Atlantic Coast Line* where the Court stated that "[w]hile the railroad could probably have based its federal case on the pendant state law claims as well, it was free to refrain from doing so and leave the state law questions ... to the state courts" because "the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts." 398 U.S. at 295, 90 S.Ct. at 1747 (citations omitted). This language, however, appears in the Supreme Court's discussion of whether the injunction was proper as necessary in aid of the district court's jurisdiction and not in its discussion of the propriety of the injunction under the relitigation exception. In that context, it is clear that the Supreme Court did not intend to suggest by this language that the res judicata effect of a prior federal judgment could not justify an injunction under the relitigation exception, but rather that the injunction at issue in *Atlantic Coast Line* was not proper as necessary in aid of the district court's jurisdiction because, under the concept of concurrent jurisdiction, both the federal and state court had jurisdiction to proceed simultaneously.

8. We note that in *Parsons II* this Court upheld the district court's finding that Appellees' failure

to seek a federal injunction at an earlier point in the state proceeding did not operate as a waiver of their right to do so because the vagueness of the state court pleadings made it difficult to determine that the state action involved the same basic cause of action that was tried in the BHCA action. 747 F.2d at 1376. While the Supreme Court in *Parsons III* distinguished the present case from the case of *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), on the basis that "[i]n each of the several cases involved in *Toucey*, the prevailing party in the federal action sought an injunction against relitigation in state court as soon as the opposing party commenced the state action, and before there was any resolution of the res judicata issue by the state court" while in this case Appellees "chose to fight out the res judicata issue in state court first, and only after losing there did they return to federal court for another try," *Parsons III*, 106 S.Ct. at 772, the Supreme Court did not question this Court's affirmance of the district court's finding that the Appellees were excused for failing to seek an injunction at an earlier point in the state proceedings, and we find no reason to alter that determination.

improper because the *Parsons I* Court upheld the district court's grant of judgment n.o.v. on a different rationale from that given by the district court. While, as Appellants argue, the preclusive effect of a judgment is determined by the decision of the appellate court when that decision rests on different grounds from the district court's decision, *see* J. Moore, 1B Moore's Federal Practice para. 0.416[2], at 518–19 (2d ed. 1984), that principle does not alter the res judicata effect of the BHCA action in this case. Even assuming this Court's decision in *Parsons I* rested on different grounds from that of the district court, it is clear that both this Court's decision and the district court's decision were on the merits and, therefore, the fact they may have been based on different grounds does not alter the determination that the BHCA action was res judicata as to Appellants' state law claims.

Finally, we find without merit the trustee's various arguments challenging the decision of the *Parsons II* Court upholding the district court's finding that the trustee was bound by the BHCA action under res judicata principles because he was in privity with the parties to that action. *Parsons II*, 747 F.2d at 1379. Those arguments were adequately dealt with by the panel in *Parsons II*, and we find no reason to reconsider that Court's determination with regard to the privity issue.[9] The trustee points out that this Court's prior opinion erroneously stated in affirming the district court's finding of privity that the federal action was pending at the time of the bankruptcy, when in fact Parsons-Montgomery was placed in bankruptcy before the federal action was filed. *See id.* at 1370, 1379. The timing of the bankruptcy in relation to the filing of the federal action, however, was not critical to the *Parsons II* Court's determination that the district court did not err in its finding of privity. Rather, that Court's affirmance was based on the trustee's knowledge of the federal action, with

regard to which he made a deliberate choice not to intervene; the identity of the facts underlying the BHCA claim and the trustee's claims; and the fact Parsons-Montgomery was the entity primarily wronged by the alleged activities of First Alabama and thus would have been the party entitled to most of the damages. *Id.* at 1379.

■ A district court has discretion to determine whether federal interference with state proceedings is warranted pursuant to the relitigation exception to the Anti-Injunction Act and, within that discretion, a district court in a given case may go either way and not be reversed. *Delta Air Lines*, 708 F.2d at 587. We cannot say that issuance of this injunction exceeded the bounds of the district court's discretion.

## C. Motion to Recuse

Parsons argues that the district judge should have recused himself because he has a personal bias against Parsons based on extrajudicial information. Parsons presented his request for recusal in the form of a letter, which the district judge construed as a motion to recuse. The information of which Parsons complains is evidenced by two statements in the district court's opinion, one showing the district judge's knowledge that Parsons had brought suit against his former attorneys, who represented him in this litigation through the time of the Supreme Court decision in *Parsons III*, and the other being a statement to the effect that "Mr. Parsons had secured a recusal by a State Court Judge by writing a similar letter to him."

The district court held that recusal was not appropriate because "the Court's only association with Mr. Parsons and any opinion that it may have of him has been gained in open Court." The district court also noted that Parsons had refused to appear at the hearing held on the motion as requested by the district court and that

---

**9.** We note that this issue was presented for review to the Supreme Court, but that Court found it unnecessary to reach the issue. *Parsons III*, 106 S.Ct. at 773 n. 4.

"the matter was presented with no evidence and no insistence upon the motion by anyone whatsoever, including Mr. Parsons' attorney." The district court also indicated that it had been "hasty and overcautious in construing the letter as a motion."

 Bias sufficient to disqualify a judge must "stem from personal, extrajudicial sources" unless "pervasive bias and prejudice is shown by otherwise judicial conduct." *United States v. Gregory*, 656 F.2d 1132, 1137 (5th Cir. Unit B 1981). Parsons has failed to present evidence sufficient to demonstrate bias in this case.

### D. Motion to Supplement the Record

Appellants have moved to supplement the record with 122 pages of material from the official court record in the state action. Appellants assert that these documents are necessary for this Court to have an accurate knowledge of what transpired in the state court proceeding.

 This Court has the discretionary power to supplement the record on appeal, even to include evidence not reviewed by the court below. *Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). We find no need, however, to exercise that discretion in this case. The thrust of the supplemental material is that the state judge had considered the res judicata issue on the merits and determined it adversely to Appellees. That fact is already clear from the record before us. As discussed above, the issue is not whether there had been a determination on the merits in state court, but whether that determination was final for preclusion purposes. Therefore, there is no need to supplement the record on this point. Further, although Appellants suggest that the district court may have referred to documents not in the record in reaching its decision, they have been unable to point to any specific documents not already in the record that were relied upon by the district court. The motion to supplement the record is denied.

### E. Findings Regarding Basis of UCC Claim

In *Parsons II*, this Court held that the factual record was insufficient to determine whether the trustee should be precluded from asserting his UCC claim. 747 F.2d at 1380. The Court found that if the trustee's claim was based "on factual allegations different from those underlying the fraud and BHCA claims" then he should not be precluded by the former federal judgment. *Id.* Therefore, the Court remanded for a determination whether the claim was based "on facts involving solely the conditions of the sale itself" rather than on allegations that the pre-sale activities of First Alabama and Orange had resulted in the receipt of an unfairly low price. *Id.* at 1381. On remand, the district court ordered the trustee to state his claim with specificity and then determined that the UCC claim was based on the pre-sale transactions also involved in the BHCA action.

 The trustee argues that the district court's determination that the trustee's UCC claim arose out of the same transactions as those forming the basis of the BHCA claim was clearly erroneous. We cannot agree. In response to the district court's order requiring that the UCC claim be stated with specificity the trustee gave the following basis for the claim: (1) the sale was a private sale two days after repossession; (2) only one potential buyer was notified of the sale; (3) the buyer (Orange) had no experience in the steel business and no prior knowledge of the value of the assets; (4) no one in the steel business and no unsecured creditor was contacted as to the date and time of the sale; (5) no notice was given to the attorney for Parsons-Montgomery prior to the sale; (6) no notice was placed in any trade or other publications; (7) no one except the seller, the purchaser and the purchaser's attorney was present; (8) the sale took place in Herbert's office, rather than a public place; (9) the price was determined in accordance with the amount of the debt;

(10) only one bid was offered and accepted; and (11) the sales price was $907,252.85 while the collateral had a value in excess of $2,500,000. The district court did not err in finding that all of these facts related to the pre-sale actions of Appellees.[10]

For the reasons stated above, the judgments of the district court are AFFIRMED.

---

**10.** The trustee also asserts that the district court based its judgment on collateral estoppel rather than res judicata and that, therefore, its determination is clearly erroneous because the UCC issue was not litigated in the federal action. It is clear, however, that the district court determined that the UCC claim was barred under res judicata principles.